UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARCO ANTONIO BENITEZ MARTINEZ,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, Attorney General; MARKWAYNE MULLIN, Secretary of Homeland Security; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; ROSARIO “PETE” VASQUEZ, Chief, U.S. Border Patrol; CAMMILLA WAMSLEY, Field Office Director, ICE Seattle Field Office; Director, ICE Spokane Field Office; Director, CBP Spokane Field Office; ROBERT NORRIS, Sheriff, Kootenai County, Idaho,<br><br>Respondents. | Case No. 1:26-cv-00609-AKB<br><br>**ORDER** |

Pending before the Court is Petitioner Marco Antonio Benitez Martinez‘s Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 1). Petitioner claims that he is a Mexican national who first entered the United States in 2007 (*id.* ¶¶ 2, 30).[1] He contends that Idaho State Police arrested him during a “routine traffic stop,” after which “either Immigration and Customs

[1] Petitioner notes that he later returned to Mexico (Dkt. 1 ¶ 30). After approximately three failed attempts, Petitioner re-entered the United States in 2021 (*id.*).

Enforcement or Customs and Border Protection" placed a hold on him (Dkt. 1 ¶ 2). The petition, however, does not provide a date for when this occurred or how long Petitioner has been detained. Petitioner is detained at the Kootenai County Jail in Idaho (*id.* ¶ 13).

Petitioner also has a pending application for a T-Visa, which provides legal status for survivors of severe human trafficking. 22 U.S.C. §§ 7102(8), 7105(b). To be eligible for a T visa, a petitioner must (1) be a survivor of a "severe form of trafficking in persons"; (2) be "physically present in the United States" or its territories; (3) have "complied with any reasonable request for assistance" by law enforcement, with some exceptions for age and the impact of trauma; and (4) be someone who would "suffer extreme hardship" if removed. *See* 8 U.S.C. § 1101(a)(15)(T).

On September 17, 2026, Petitioner filed the instant petition challenging his detention on the grounds that he cannot be detained because he is a member of a class certified by the Central District of California in *Immigration Center for Women & Children v. Noem* (*ICWC*), 351 F.R.D. 324 (C.D. Cal. May 20, 2026), which prevents his detention (Dkt. 1 ¶¶ 1, 55–56). Alternatively, he contends that his detention is unlawful because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have determined he is subject to mandatory detention without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A) (Dkt. 1 ¶ 7). Petitioner has also filed a Motion for Temporary Restraining Order (Dkt. 2).[2]

In *ICWC*, a group of noncitizens with pending victim-based immigration applications, including T-visa applications, brought a class action suit in the Central District of California

---

[2] It is not entirely clear on what basis Petitioner is detained, in part because the petition does not appear to have been updated following the Ninth Circuit's recent decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. July 30, 2026), or since August 4, when ICE began implementing updated guidance about reassessing custody of detainees under § 1226(a), *see* Declaration of Jared D. Callahan ¶ 10, *Sanchez Ramirez v. Knight*, No. 26-cv-00498-AKB (Aug. 12, 2026), Dkt. No. 9-1.

against DHS, ICE, and the United States Citizenship and Immigration Services (USCIS), challenging ICE's January 2025 Guidance concerning enforcement actions against noncitizens with pending victim-based immigration-benefit petitions, including U-visa petitions, T-visa petitions, and VAWA self-petitions. 351 F.R.D. at 348–50, 353–55. Prior to the 2025 policy shift, ICE operated under a 2011 policy and 2021 directive that "generally required ICE to refrain from pursuing removal against persons with pending . . . T visa petitions." *Id.* at 353. The 2025 guidance, however, expressly "rescinded and superseded" those policies, eliminating the presumption of protection for applicants for T-visas. *Id.* at 354. Relevant here, the *ICWC* court found that the 2025 Guidance was contrary to Congress's "clearly stated [] purpose in creating victim-based benefits: to protect noncitizen victims of crime from unnecessary removal." *Id.* at 385. By not requiring ICE agents to consider a noncitizen's pending T-visa application nor requiring ICE to "request expedited adjudications from USCIS" regarding prima facie eligibility, except when it is "in ICE's best interest," the 2025 Guidance effectively eliminated the protections afforded by the prior policies to noncitizens with pending victim-based immigration applications. *Id.* at 385–86. The court also stayed a portion of the 2025 Guidance dubbed the De Facto Revocation Policy, whereby people with deferred status are nonetheless subject to enforcement actions, including removal. *Id.* at 386.

Ultimately, the court entered a nationwide stay on the 2025 Guidance and the De Facto Revocation Policy, including its rescission of the 2011 and 2021 policies, as to all class members and members of the Deferred Action Class, respectively. *Id.* at 396–97. One of those classes—the Pending Petition Class—consists of those who (1) have applied for a victim-based benefit, and (2) whom ICE has "detained or seeks to detain." *Id.* at 372. The Deferred Action Class, on the

other hand, consists of those who (1) have been granted deferred action based on a pending U or T visa petition, and (2) whom ICE has "detained or seeks to detain." *Id.*

Petitioner alleges that he falls within the Pending Petition Class because he has a pending T-visa petition and ICE has detained him for civil immigration enforcement (Dkt. 1 ¶¶ 2, 53–55). According to Petitioner, because *ICWC* stayed the 2025 Guidance and its De Facto Revocation Policy, ICE cannot continue to detain him under the stayed enforcement framework (*id.* ¶¶ 54, 91–93). But Petitioner does not explain what effect, if any, the class-wide relief entered in *ICWC* has on this habeas proceeding. *ICWC* is a preliminary, non-final order issued by another district court, and Petitioner identifies no authority establishing that the *ICWC* order independently entitles a class member to habeas relief in another district. *See Vargas Cervantes v. Mullin*, No. 26-CV-04467, 2026 WL 1907198, at *4 (E.D. Cal. July 2, 2026) (finding it unclear "how a civil litigant can proceed under the APA to enforce a right bestowed to him as a class member in a civil action pending in another district"), *report and recommendation adopted in part*, 2026 WL 2030189 (E.D. Cal. July 14, 2026); *Rauda Choto v. Ladwig*, No. 26-0322, 2026 WL 1652576, at *1–2 (W.D. La. June 8, 2026) (rejecting the argument that *ICWC*'s non-final order entered in separate litigation independently established the petitioner's entitlement to relief); *Ramos Ramirez v. Field Office Director*, No. 26-CV-1054, 2026 WL 2546059, at *8 (N.D. Ohio Aug. 28, 2026) (concluding that the *ICWC* preliminary injunction did not establish that the petitioner's detention was unlawful).

Petitioner's reliance on the *ICWC* stay of the De Facto Revocation Policy presents a separate issue. Despite Petitioner's claim that the policy was stayed as to all members of the Pending Petition Class, the *ICWC*'s Order clearly limits the stay to members of the Deferred Action Class only. 381 F.R.D. at 397. Petitioner does not allege that he is a member of the Deferred Action Class or that he was granted deferred status. Thus, to the extent that Petitioner's claim rests

specifically on the stay of the De Facto Revocation Policy, the petition does not establish that the stay applies to him.

Nor is it clear on the present record that Petitioner is a member of the Pending Petition Class. Although Petitioner alleges that he has a pending T-visa petition and that ICE has detained him, the petition provides little information concerning the circumstances of his detention or the authority under which he is currently detained (Dkt. 1 ¶¶ 2, 7, 13). The Court therefore cannot determine whether the factual predicates for membership in the Pending Petition Class are satisfied or whether Respondents detained or seek to detain Petitioner under the policies challenged in *ICWC*. The parties should address these issues in future briefing.

Finally, even if the *ICWC* order applies in this District and that Petitioner is a member of the Pending Petition Class, Petitioner has not explained why the *ICWC* order entitles him to release from custody. The relief entered in *ICWC* concerned ICE's challenged enforcement policies and did not, on its face, establish that every class member is entitled to release from detention. *See ICWC*, 351 F.R.D. at 396–97. Other courts considering similar arguments have likewise declined to conclude that *ICWC* independently establishes an entitlement to release. *See Vargas Cervantes*, 2026 WL 1907198, at *3–4 (distinguishing between rights arising from the *ICWC* class action and entitlement to habeas relief in another district); *Ramos Ramirez*, 2026 WL 2546059, at *8 (concluding that the petitioner had not identified authority establishing that *ICWC* required his release); *Ayala-Morales v. Olson*, No. 2:26-cv-00375, slip op. at 2-3 (S.D. Ind. June 22, 2026) (concluding that, even assuming the petitioner was a member of the *ICWC* class and that *ICWC* was binding, the order did not entitle him to automatic release). The Court therefore requires Petitioner to identify the specific provision of the *ICWC* order, or other applicable authority, that he contends prohibits his detention and entitles him to release.

Accordingly, the parties should address (1) whether and to what extent the class-wide relief entered in *ICWC* applies in this District; (2) whether Petitioner satisfies the requirements for membership in the Pending Petition Class; and (3) assuming Petitioner is a class member to whom the *ICWC* relief applies, what provision of the *ICWC* order or other applicable authority entitles him to release from custody.

If Petitioner is not entitled to relief under *ICWC*, the parties should likewise address whether Petitioner was detained in accordance with § 1226(a) or any other applicable detention authority. Although Petitioner alleges he is subject to a detainer, the record does not establish whether Petitioner was arrested pursuant to a warrant; whether ICE conducted an initial custody determination; or whether a Form I-286 was issued and served. The Court therefore orders Respondents to provide the information and records necessary to determine whether Petitioner's detention complies with the applicable statutory and regulatory requirements in accordance with the instructions set forth below. *See Danforth v. Minnesota*, 552 U.S. 264, 278 (2008) (holding court may adjust habeas procedures based on "equitable and prudential considerations"). Additionally, Respondents should address the following: (1) whether Petitioner was arrested pursuant to a lawfully executed and served administrative warrant under 8 C.F.R. § 236.1(b); (2) whether an initial custody determination was conducted as to Petitioner under 8 C.F.R. § 236.1(c)(8); and (3) whether a Form I-286 Notice of Custody Determination was served on Petitioner under 8 C.F.R. § 236.1(g). If an initial custody determination was conducted and Petitioner was found to be a flight risk or danger to the community, Respondents should provide details on the basis for their determination.

Finally, if Petitioner is afforded a bond hearing before an immigration judge (IJ) before resolution of this petition, the Court offers the following guidance. "In a constitutionally valid

bond hearing, an alien '(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her, (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests.'" *Garcia Ortiz v. Henkey*, No. 26-CV-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (quoting *Kamara v. Att'y Gen. of the U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)). The immigration judge should consider only evidence in the record and create a "Record of Proceeding." 8 C.F.R. § 1003.36. Petitioner may appeal an IJ's bond determination to the Board of Immigration Appeals. *See* 8 C.F.R. § 236.1(d)(3). Violation of these procedures may provide an additional basis for habeas relief.

The Court also takes this opportunity to clarify what it expects in future habeas petitions challenging immigration detention. Petitioner's counsel should identify the specific statutory or regulatory provision allegedly violated and explain how the facts of the particular case establish that violation. General assertions that ICE has failed to follow "the law" or has violated a petitioner's due process rights, without identifying the particular requirement at issue and providing supporting authority, do not adequately present a claim for habeas relief. Counsel should also distinguish between challenges to detention under § 1225(b)(2)(A) and challenges to detention under § 1226(a), as the two statutory regimes impose different requirements.

## ORDER

**IT IS ORDERED that:**

1. Respondents shall file a response to the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 1) and to Petitioner's Emergency Motion for Temporary Restraining Order and Stay of Removal (Dkt. 2) no later than **September 25, 2026**.

2. Petitioner shall have an opportunity to file a reply no later than **September 30, 2026**.

3. Service of the Petition and this Order shall be made by Petitioner on the United States Attorney for the District of Idaho in accordance with Federal Rule of Civil Procedure 4(i) by **September 23, 2026**, and shall constitute good and sufficient service.

4. To further expedite adjudication of this matter, the Clerk of Court is directed to promptly provide a copy of the Petition and this Order to the United States Attorney's Office for the District of Idaho via email at USAID.HabeasPetitions@usdoj.gov.

5. Respondents must **PRODUCE** the following records, which are relevant to the lawfulness of Petitioner's detention, to Petitioner's counsel no later than August 26, 2026: (1) Form I-200 Warrant for Arrest of Alien and/or Form I-205 Warrant of Removal/Deportation; (2) Form I-286 Initial Custody Determination; (3) Form I-862 Notice to Appear; (4) Form I-213 Record of Deportable or Inadmissible Alien; (5) all immigration court orders in Petitioner's removal proceedings; (6) documents reflecting appeals of any immigration court orders by the Department of Homeland Security and/or Petitioner; and (7) transcripts and/or audio recordings of any custody redetermination proceeding(s). Alternatively, Respondents must **CERTIFY** no later than **September 25, 2026**, that, after a diligent search, they determined that these records do not exist or are not in their possession, custody, or control. If any of these records are not produced or certified as described above, the Court may infer they do not exist unless Respondents indicate otherwise.

6. Pursuant to the All Writs Act, 28 U.S.C. § 1651, to further preserve the status quo and protect the Petitioner's right to continued access to counsel, during the briefing and hearing process and until the Court can issue a decision, Respondents may not engage in activities or

communications with the Petitioner in an effort to secure the abandonment of his rights in this action or regarding his rights in removal proceedings, without the presence of counsel.

**DATED:** September 21, 2026

Amanda K. Brailsford
U.S. District Court Judge